## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **RENE S. RODRIGUEZ, JUANA** | ) |
| **ANDERSON (DEBTORS)** | ) |
| | )  **CIVIL ACTION NO.  SA-06-CA-323-XR** |
| **ROSARIO DIVINS, CREDITOR** | )  **BANKR. CASE NO. 05-55166-LMC** |
| **(APPELLANT)** | ) |
| | ) |
| | ) |
| | ) |

## ORDER

Appellant, Rosario Divins, appeals an order of the United States Bankruptcy Court for the Western District of Texas, the Honorable Leif M. Clark presiding, holding Divins in contempt and ordering her to pay $15,000 to the Clerk of the United States Bankruptcy Court as a fine for three violations of prior Bankruptcy Court Orders and $6,000 to Debtors as a refund of fees paid by the Debtors to Divins.  For the reasons stated below, the Court AFFIRMS IN PART, VACATES IN PART, AND REMANDS WITH INSTRUCTIONS.  Fifth Circuit precedent clearly establishes that Bankruptcy Courts in this judicial circuit may entertain civil contempt actions, but not criminal contempt actions.  The Court AFFIRMS the Bankruptcy Court's order requiring Divins to make a $6,000 refund payment to the Debtors because the refund order was compensatory and constituted a valid exercise of the Bankruptcy Court's civil contempt power.  The Court VACATES the Bankruptcy Court's order requiring Divins to make a $15,000 fine payment to the Clerk of the Bankruptcy Court because the fine order was punishment for a past act of disobedience and constituted criminal contempt.  Based on the record in this case, the Court strongly disapproves of appellant's continued and persistent violations of prior Bankruptcy Court Orders, and the Court

sympathizes with the Bankruptcy Court's desire to vindicate its authority and punish noncompliance with its prior orders prohibiting Divins from engaging in specified conduct. However, this Court is constrained by Supreme Court and Fifth Circuit precedent holding that the imposition of a punitive fine payable to the Court for a past act of disobedience constitutes criminal contempt. Divins is unable to purge herself of this contempt because she has already engaged in the prohibited acts, and the $15,000 fine is not a compensatory payment made to the Debtors. Thus, the portion of the order requiring the $6,000 refund payment is AFFIRMED, and the portion of the order requiring the $15,000 fine payment is VACATED AND REMANDED WITH INSTRUCTIONS that the Bankruptcy Court may certify this criminal contempt matter to the District Court for further proceedings. As an alternative to certifying this criminal contempt matter, the Bankruptcy Court may impose monetary sanctions on Appellant pursuant to 11 U.S.C. § 110. The Clerk is instructed to close this case.

## I. Factual and Procedural Background

This appeal arises from a Show Cause Hearing in a Chapter 13 Bankruptcy proceeding. On September 2, 2005, Rene S. Rodriguez and Juana Anderson (collectively, the "Debtors") filed the case before the United States Bankruptcy Court for the Western District of Texas numbered 05-55166-LMC. On January 5, 2006, the Honorable Leif M. Clark granted a motion by the United States Trustee, ordering Rosario Divins ("Appellant"), a creditor involved in the underlying bankruptcy case, to appear and show cause why she should not be held in contempt for violating prior unrelated Bankruptcy Court Orders.

In early 2005, Debtors defaulted on their mortgage and faced foreclosure of their home. Debtors received a letter from Appellant in March or April of 2005 offering to assist them with saving their home from foreclosure. Debtors met with Appellant in March or April of 2005, during

which time Appellant told them that she could save their home from foreclosure.  Debtors paid

Appellant $5,350 and transferred their 1994 Mazda pick-up truck to Appellant, after which time

Appellant told Debtors that she would use $2,500 of the $5,350 paid to cure the mortgage arrears and

$2,600 for current payments.  During this exchange, Appellant instructed Debtors not to file

bankruptcy.  Appellant is not a licensed attorney.

After Appellant failed to assist Debtors in obtaining new financing or paying down their

existing mortgage, Debtors filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code,

commencing the case out of which this appeal arises.  Debtors received no credit from the mortgage

company for the money paid to Appellant, and Appellant did not refund any of the $5,350 or return

the 1994 Mazda pick-up truck to Debtors.  In all, Appellant made arrangements to stop foreclosure

on Debtors' house on three different occasions, a practice which prior court orders had forbidden.

Rosario Divins has a long history of violating Bankruptcy Court Orders in the Western

District of Texas.  In *In re Lara*, Case No. 94-51228, Judge King of the United States Bankruptcy

Court for the Western District of Texas entered an Order ("October 26, 1994 Order") finding

Appellant in violations of the provisions of 11 U.S.C. § 110.[1]  The Order provided that Appellant

---

[1]Congress added section 110 to the Bankruptcy Code in 1994, as a congressional response
to perceived abuse of the bankruptcy laws by so called "typing services" which had proliferated
especially in the Central District of California. *See* Pub.L. No. 103-394, Title III, § 308, 108 Stat.
4106, 4135-37 (1994) (applying to bankruptcy cases commenced after Oct. 22, 1994); Sponsors of
the legislation expressed a desire to see Congress control the proliferation of "bankruptcy typing
mills" which were said to have "unfairly preyed upon" people who "do not speak English or
understand the bankruptcy system." 140 Cong. Rec. H10772 (Oct. 4, 1994) (statements of Rep.
Berman).

Section 110 establishes a set of requirements with which bankruptcy petition preparers must
comply. Petition preparers must sign all documents they prepare and must include their name,
address and social security number on those documents. *See* 11 U.S.C. § 110(b)(1), (c)(1). They must
furnish debtors with a copy of all documents they prepare. *See* 11 U.S.C. § 110(d)(1). Within ten
days after the filing of a bankruptcy petition, the petition preparer must file a declaration with the

-3-

was 1) not to engage in the unauthorized practice of law in this case or any potential case in the Western District of Texas; 2) not to counsel with clients or prospective bankruptcy debtors concerning whether to file bankruptcy; whether a spouse should join in a bankruptcy case; under which Bankruptcy Code Chapter to file; and Appellant was not to prepare or furnish legal forms or give advice how to fill out legal forms or answer questions in the forms in connection with the filing of a bankruptcy case; and 3) not to charge or collect referral fees from attorneys or share fees with attorneys. *In re Guttierrez*, 248 BR 287, 289 n.1 (Bankr. W.D. Tex. 2000).

On January 5, 2000, the Bankruptcy Court entered an Order to Appear and Show Cause in a different case styled *In re Gutierrez*, Case No. 99-53034-LMC-13 (the "January 5, 2000 Order"). Pursuant to the January 5, 2000 Order, the court permanently enjoined Appellant from 1) offering or providing any bankruptcy petition preparation service or activity on behalf of anyone at any time and in any fashion, 2) making any representation of any kind, express or implied, to any individual or the public that Appellant or anyone associated with her can or would assist or help or ever try to assist or help any individuals or persons to "stop foreclosure," 3) making any representation, express or implied, that "mortgage brokering services" can or may be able to assist any individual or persons to "stop foreclosure," and 4) making any representation, express or implied, to any individual or

---

court stating all compensation they received from the debtor in the twelve months preceding the filing. *See* 11 U.S.C. § 110(h)(1). Section 110 empowers the bankruptcy court to enjoin petition preparers from engaging in conduct that is prohibited by section 110 or is otherwise "fraudulent, unfair, or deceptive." *See* § 110(j). If the bankruptcy petition preparer habitually engages in conduct prohibited by section 110, the bankruptcy court may permanently enjoin that person from acting as a petition preparer. *See* § 110(j)(2)(B). Under Section 110(l), the bankruptcy court may impose a fine not to exceed $500, payable to the Government, for specific violations of section 110, and it may triple those amounts under certain circumstances. *See* § 110(l)(2). Additionally, under section 110(i), the bankruptcy court may award significant monetary sanctions–including actual damages, statutory damages, and attorney's fees–if the bankruptcy court finds that the petition preparer "violates this section [110] or commits any act that the court finds to be fraudulent, unfair, or deceptive." In contrast to section 110(l) sanctions, section 110(i) sanctions are payable to the debtor.

-4-

persons that Appellant or persons associated with her can assist with bankruptcy filings, actually help debtors file bankruptcy cases, or advise individuals or persons with respect to a bankruptcy case. *See Gutierrez*, 248 B.R. at 300.

On April 17, 2000, in the same case, Judge Clark issued another Order to Show Cause ("April 17, 2000 Order") following a hearing on the Chapter 13 Trustee's motion to dismiss Gutierrez's chapter 13 bankruptcy case. The court found that Appellant 1) held herself out to the public in general and to Gutierrez in particular as a person who could assist persons to "stop foreclosure," in express violation of the October 26, 1994 Order; 2) charged Gutierrez a fee in excess of $1,700 for preparation of a bankruptcy petition; 3) failed to disclose her assistance and the fee she received; 4) suborned perjury by advising Gutierrez to complete the Pro Se Filing Questionnaire without disclosing Appellant's assistance[2]; 5) suborned perjury by advising Gutierrez to file her bankruptcy forms without disclosing the amount of fees paid to Appellant; 6) committed theft of services by transferring her own utility bill to Gutierrez with the intention that the charges for those services (in excess of $3,000) would be discharged in Gutierrez's bankruptcy; and 7) violated provisions of 18 U.S.C. § 152 by knowingly and fraudulently attempting to use the debtor's bankruptcy discharge to discharge the charges for Appellant's own utility services. *Gutierrez*, 248 B.R. at 289-290. The April 17, 2000 Order also reiterated the provisions of the permanent injunction contained in the January 5, 2000 Order. *Gutierrez*, 248 B.R. at 300.

On June 9, 2000, the Bankruptcy Court entered an Agreed Order Allowing Installment Payments On Court Ordered Funds and Reducing the Amount of Fines In The Event Installments Are Timely Made ( "June 9, 2000 Agreed Order") in the same case. The June 9, 2000 Agreed Order,

---

[2]This form must be completed by all debtors filing *pro se.* This questionnaire requires the debtor to disclose, under penalty of perjury, any person who has assisted the debtor and any fees paid for such assistance.

which is signed by Appellant and Appellant's counsel, again permanently enjoins Appellant from the activities set forth in the January 5, 2000 Order and the April 17, 2000 Order . The June 9, 2000 Agreed Order also provides that failure to comply with any of the terms of the Agreed Order may result in a finding that Appellant is in contempt of Court, which finding could result in the assessment of additional fines and/or penalties, or incarceration.  The Agreed Order stated that it "shall be strictly construed as an Order entered in aid of enforcement of 11 U.S.C. § 110."

On September 26, 2003, the Bankruptcy Court, in *In re Guerrero*, Case No. 03-52541-LMC-13, entered an Order on Order to Appear and Show Cause (September 26, 2003 Order").  Pursuant to the September 26, 2003 Order, the Bankruptcy Court ordered that Appellant pay the Chapter 13 Trustee $1,800, which was the sum of $1,500 Appellant received from the Guerreros for payment to their mortgage company and $300 for payment of Appellant's fees.  Importantly for purposes of this appeal, the Bankruptcy Court further ordered that in each matter in which the court finds that after August 18, 2003, Appellant has violated the terms of the June 9, 2000 Agreed Order, the Bankruptcy Court would assess a sanction of at least $5,000 against Appellant, independent of any actual damages the court might find.  Finally, the September 26, 2003 Order provides that failure to comply with the terms of this Order may result in a finding that Appellant is in contempt of court, which finding could result in the assessment of additional fines and/or penalties, or incarceration. Appellant initially appealed the September 26, 2003 Order but subsequently abandoned the appeal, rendering the September 26,2003 Order final and not appealable.

Summarizing the preceding facts, the United States Bankruptcy Court for the Western District of Texas entered the *Lara* Order on October 26, 1994.  Then, on January 15, 2000, the Bankruptcy Court entered the first *Gutierrez* Order, which permanently enjoined Appellant from engaging in the prohibited conduct referenced in the current appeal.  On April 19, 2000, the

-6-

Bankruptcy Court entered the second *Gutierrez* Order, which found that Appellant had engaged in prohibited conduct and reiterated the permanent injunction contained in the January 15, 2000 Order. Two months later, Appellant agreed to refrain from the conduct outlined in the first and second *Gutierrez* Order by signing the Agreed Order on June 9, 2000. Finally, on September 26, 2003 in a subsequent case, the Bankruptcy Court found Appellant in contempt for violating the terms of the Agreed Order and issued the *Guerrero* Order, which outlined a prospective fine schedule of $5,000 per violation (independent of any actual damages) in the event that Appellant violated the terms of the Agreed Order in the future.

On February 7, 2006, Appellant appeared at the Show Cause Hearing before the Bankruptcy Court, from which she appeals, and requested a continuance because her attorney could not appear due to a conflicting trial. The Judge subsequently denied the continuance, citing that Appellant had notice of the hearing and waited until the day prior to the hearing to contact her attorney. Tr. 22:20. The Judge stated that "this is a civil proceeding, not a criminal proceeding." Tr. 22:12. Appellant proceeded *pro se* throughout the hearing, during which she was able to enter exhibits into evidence, question one of the Debtors, Juana Anderson, as a witness, and present her own testimony under oath.

During the hearing, Mrs. Anderson testified that Divins "guaranteed that she could get our house stopped for foreclosure." Tr. 31:25, 34:11-12. Mrs. Anderson testified that she and her common-law husband paid Divins $5,350 in cash and gave her the title to their 1994 Mazda pick-up truck. Tr. 35:12-15. During cross-examination of Mrs. Anderson and during her own testimony, Divins established that she forwarded some of this money to pay two attorneys–Mr. Stephen Graves and Mr. Gene Rosas–to file temporary restraining orders in state court on three different occasions in order to stop the foreclosure of Debtor's home. Divins also testified that she attempted to obtain

-7-

buyout financing from both public and private lenders in an effort to pay-off or settle the Debtor's delinquent home equity loan and avoid foreclosure; however, she did not produce any documents during the hearing to substantiate this claim.[3]  The Bankruptcy Judge found that Divins served as a conduit to funnel attorney's fees to Graves and Rosas, while retaining some of the money for herself. The Judge found that Divins made express and implied representations to the Debtors that Divins, or persons associated with her (i.e. attorneys Graves and Rosas), would assist or help the debtors in stopping foreclosure through the use of temporary restraining orders or through the arrangement of buyout financing.  Tr. 150:14-20.  The Bankruptcy Judge found that Divins attempted to use the TROs to buy time to arrange the buyout financing.

At the conclusion of the hearing and upon consideration of the evidence presented, the Judge found that Divins had violated previous Bankruptcy Court Orders on three separate occasions and found her to be in contempt.  The Bankruptcy Court assessed a fine of $15,000, or $5,000 for each of the three past violations of the Court's June 9, 2000 Order and September 26, 2003 Order.[4]  The Bankruptcy Court found that all the money paid to Divins by the Debtors was squandered and wasted; therefore, the Court ordered Divins to make a $6,000 refund payment to compensate the Debtors for the money and Mazda pick-up truck they gave Divins to stop the foreclosure.  The Bankruptcy Court stated the following: "I'm assessing $15,000 against Ms. Divins for three violations of the Court's previous order.  I'm assessing $6,000 for the cost of three temporary restraining orders that should never have been sought in the first place.  I know that the attorneys

---

[3]Divins stated that she accidentally left these records at home.

[4]The Bankruptcy Court found three violations based on the fact that Divins hired attorneys Graves and Rosas to file temporary restraining orders to stop foreclosure on the Debtors' house on three different occasions. Tr. 153:4-6 ("I have three: the foreclosure in February, foreclosure in May, the foreclosure in July.  Three instances, $5,000 apiece").

were paid for this work.  I'm leaving open the possibility that disgorgement of those fees should be sought from those attorney's . . . .  It shouldn't have happened.  The vehicle shouldn't have been sold, the money shouldn't have been . . . spent in this way . . . . I just mean to suggest that, under the circumstances of cases such as this, it's clear that the money is just being thrown down a rat hole."  Tr. 155:9-17.

Appellant raises four points of error in her appeal.  First, Appellant claims that the Court erred in overruling the Motion for Continuance orally argued by Appellant, *pro se*, given her insufficient notice, the evidence presented and in the interest of justice to maintain a fair trial.  (Appellant's Brief, p. 4-5).  Second, Appellant maintains that the Court erred in finding sufficient evidence that Appellant violated the Agreed Order. (Appellant's Brief, p. 5).  Appellant also argues that the Court erred in finding sufficient evidence that she violated the September 26, 2003 Order.  (Appellant's Brief, p. 5).  Finally, Appellant contends that the Court erred in holding a Criminal Contempt Hearing without jurisdiction or proper notice and in violation of the Appellant's right to counsel.  (Appellant's Brief, p. 5).

## IV. Legal Analysis

### A.    Appellant has standing to pursue this appeal.

Standing in bankruptcy cases is governed by the "person aggrieved" test.  *In re Coho Energy, Inc.*, 395 F.3d 198, 202 (5th Cir. 2004).  In order to satisfy this test, the appellant must show that she was "directly and adversely affected pecuniarily by the order of the bankruptcy court" in order to have standing to appeal.  *Id.* at 203.  In this case, Divins was clearly affected pecuniarily by the Bankruptcy Court's order finding her in contempt and requiring her to make a $6,000 refund payment to the Debtors and a $15,000 fine payment to the Bankruptcy Court.  Therefore, this Court concludes that Divins has standing to pursue this appeal.

**B.      The standard of review.**

The Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).  The district court reviews the bankruptcy court's findings of fact for clear error, giving due regard to the bankruptcy judge's opportunity to judge the credibility of witnesses. *General Electric Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 369 (5th Cir. 2005); *Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling)*, 258 F.3d 385, 387 (5th Cir. 2001); *See In re Young*, 995 F.2d 547, 548 (5th Cir. 1993) (citing Bankr. Rule 8013).  The bankruptcy court's factual findings are clearly erroneous only if, on the entire evidence, the Court is left with a "definite and firm conviction that a mistake has been made." *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.,* 346 F.3d 530, 533 (5th Cir. 2003); *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992).   Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Anderson v. Bessener City*, 470 U.S. 564, 574 (1985).

The Court reviews the bankruptcy court's conclusions of law *de novo*. *In re Acosta,* 406 F.3d at 369; *In re Jack/Wade Drilling*, 258 F.3d at 387. The admission of evidence is committed to the sound discretion of the bankruptcy court, subject to review for abuse of that discretion. *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1374 (5th Cir. 1981).  However, when the Court reviews mixed questions of law and fact it must give deference to the factual findings made by the bankruptcy court unless clearly erroneous, but the court must independently determine the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found. *In re Musslewhite*, 270 B.R. 72, 77 (S.D. Tex. 2000).

**C.      The denial of Appellant's motion for continuance was not an abuse of discretion.**

The decision to grant or deny a continuance lies within the discretion of the trial judge and may be reversed only for an abuse of discretion.  *United States v. Hopkins*, 916 F.2d 207, 217 (5th

-10-

Cir. 1990). Whether a denial of a continuance was properly denied depends on relevant circumstances of the case including the amount of time available, the defendant's role in shortening the time needed, the likelihood of prejudice from a denial, and the availability of discovery from the prosecution. *Id.* The Clerk mailed notice of the hearing to the Appellant on January 7, 2006, giving her one month's notice of the hearing. Tr. 6:21. The Bankruptcy Judge reasoned that the circumstances of the case justified denial of the motion because Divins failed to contact her attorney until one day prior to the Show Cause Hearing without good cause. Additionally, the transcript of the hearing shows that Appellant admitted evidence, testified as to the nature of her relationship and transactions with the Debtors, and cross-examined Juana Anderson under oath.

The Court finds that Divins was solely at fault for neglecting to contact her attorney until the day before the hearing. Additionally, the Court finds that Divins was given notice reasonably calculated to inform her of the upcoming hearing. Finally, the Court finds that Divins was not significantly prejudiced from the denial because she testified during the hearing, submitted evidence, and cross-examined witnesses. Based on these findings, the Court concludes that the bankruptcy court did not abuse its discretion in denying Appellant's motion for continuance.

**D.     The Fifth Circuit has held that bankruptcy courts in this judicial circuit may entertain civil contempt actions, but not criminal contempt actions.**

       **1.     Bankruptcy Courts in the Fifth Circuit may conduct civil contempt proceedings.**

Bankruptcy courts in the Fifth Circuit have the authority to conduct civil contempt proceedings. *Placid Refining Company v. Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir.1997); *In re Unclaimed Freight of Monroe, Inc.*, 244 B.R. 358, 364 (Bankr. W.D. La. 1999). The Fifth Circuit has delineated the test for civil contempt. In *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries, Inc.*, the Court observed that the test for contempt requires the showing that (1) a court order was in effect; (2) the order required certain conduct; and (3) the respondent failed to

comply with the order. 177 F.3d 380, 382 (5th Cir.1999). In civil contempt, the burden of proof is clear and convincing, as opposed to preponderance of evidence. *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir.1987). In a civil contempt proceeding, clear and convincing evidence is "that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir.1995) (quoting *Securities and Exchange Commission v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir.1981)). Intent is not an issue in civil contempt proceedings; rather, "the question is not one of intent but whether the alleged contemnors have complied with the court's order." *Jim Walter Res. v. Int'l Union, United Mine Workers of America*, 609 F.2d 165, 168 (5th Cir.1980). Willfulness is not an element of civil contempt. *Petroleos Mexicanos*, 862 F.2d at 401. Once the movant has established the failure to comply with an order, then the respondent bears the burden of showing mitigating circumstances that might permit the court to withhold exercising its contempt power. *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir.1987). A party may avoid a contempt finding where it can show that it has substantially complied with the order, or has made every reasonable effort to comply. *U.S. Steel Corp. v. United Mine Workers of Am., Dist. 20*, 598 F.2d 363, 368 (5th Cir.1979).

The Court may incarcerate a party found in civil contempt for up to 18 months. 28 U.S.C. § 1826(a). The Court may order payment of actual damages, including attorney's fees, from one

party to another as a civil contempt sanction. *Petroleos Mexicanos*, 826 F.2d at 399 ( "sanctions for civil contempt are meant to be wholly remedial and serve to benefit the party who has suffered injury or loss at the hands of the contemnor."); *In re Musslewhite*, 270 B.R. 72, 78 (S.D. Tex. 2000) (affirming bankruptcy court's civil contempt sanction awarding attorney's fees to party). Compensatory damages awarded as a sanction for violation of a court order are to "[reimburse] the injured party for the losses and expenses incurred because of his adversary's noncompliance." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir.1976). Alternatively, the Court may impose as a civil contempt sanction a prospective per diem fine payable to the Court to coerce compliance with a Court Order requiring prospective performance of an affirmative act. *See Adams*, 918 F.2d at 567 (affirming prospective per diem fine of $500 payable to Court until contemnor produced certain documents). In setting a prospective per diem fine amount to coerce compliance with a Court Order, the Court should consider the following factors: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order. *Adams*, 918 F.2d at 567.

### 2. Bankruptcy Courts in the Fifth Circuit may not conduct criminal contempt proceedings.

In contrast to their authority to conduct civil contempt proceedings, bankruptcy courts in the Fifth Circuit do not have the authority to conduct criminal contempt proceedings. *See In re Hipp,Inc.*, 895 F.2d 1503, 1521 (5th Cir. 1990) ("Bankruptcy courts have no inherent or statutory power–and none is granted them by 11 U.S.C. § 105 or by 28 U.S.C. § 157 or by Rule 9020–to preside over section 401(3) criminal contempt trials for violation of bankruptcy court orders or to acquit, convict, or sentence for such offenses. Not only must the acquittal or conviction and sentence for such offenses be by the district court, but all critical stages of the trial of such offenses must

-13-

likewise be before that court").  Criminal contempt proceedings "should be governed by Fed. R. Crim. P. 42(b), and heard by the district court (or by that court and a jury). Rule 42(b) would appear to contemplate that the district court that decides the criminal contempt will hear the evidence and conduct the trial." *Id.* at 1520.  The Fifth Circuit has explicitly rejected the argument that the district court can conduct a *de novo* review of a bankruptcy court's criminal contempt finding under Bankruptcy Rule 9020.  *See id.* at 1521. ("Hence, we conclude that de novo district court review–and certainly where that review is wholly on the basis of the bankruptcy court trial record–is not a sufficient basis on which to predicate a section 401(3) criminal contempt conviction for violation of a bankruptcy court order, notwithstanding that the district court may purport to itself render the judgment of conviction and impose the sentence. On the contrary, such criminal contempts must be tried before the district court").  The Fifth Circuit held that bankruptcy courts cannot hear or determine criminal contempts based on narrow statutory construction that was motivated by constitutional considerations. *See id.* at 1509. ("[W]e now turn to consideration of the bankruptcy court's power to hear and determine criminal contempts.  We conclude that the bankruptcy court lacks such power, at least as to contempts not committed in (or near) its presence, so that in the event of further prosecution of this offense, the hearing and determination must be before and by the district court. While our holding in this respect is one of statutory construction and we do not ultimately determine whether this result is constitutionally mandated, our conclusion is nevertheless influenced by the perception that the constitutionality of the contrary position is subject to substantial question. We follow the settled rule that federal statutes, where they may reasonably be so construed without violence to their clear meaning, should be given an interpretation that avoids serious question as to their constitutional validity").

A district court may hold a party in criminal contempt based on that party's violation of a bankruptcy court's order. *See U.S. v. Revie*, 834 F.2d 1198, 1206 (5th Cir. 1987) (affirming a district court's criminal contempt conviction of a party who violated a bankruptcy court's order).

**E.      The Court AFFIRMS the Bankruptcy Court's order requiring Divins to make a $6,000 refund payment to the Debtors because it was a compensatory payment to a party and constituted a valid exercise of the Bankruptcy Court's civil contempt power.  The Court VACATES the Bankruptcy Court's order requiring Divins to make a $15,000 fine payment to the Clerk of the Bankruptcy Court because it was punitive fine payable to the Government for a completed act of disobedience and constituted criminal contempt**.

**1.      The Court will characterize a contempt sanction as civil or criminal depending upon its primary purpose**.

The Court now must characterize the $15,000 fine payment and the $6,000 refund payment as a civil or criminal contempt sanction.  A contempt order or judgment is characterized as either civil or criminal depending upon its primary purpose. *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990). If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. *Id.* If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil. *Id.* A key determinant in this inquiry is whether the penalty imposed is absolute or conditional on the contemnor's conduct. *Id.* When contemnors "carry the keys of their prison in their own pockets," the contempt proceedings are almost universally found to be civil. *Shillitani v. United States,* 384 U.S. 364, 368 (1966); *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976). A Court's characterization of a proceeding is not necessarily conclusive, but only one factor to be considered in properly determining the nature of the contempt judgment. *Southern Railway Co. v. Lanham*, 403 F.2d 119, 124 (5th Cir. 1968); *Cliett v.*

*Hammonds*, 305 F.2d 565, 569 (5th Cir. 1962). The essential distinctions between civil and criminal contempt are that:

> (1) civil contempt lies for refusal to do a commanded act, while criminal contempt lies for doing some forbidden act;
> (2) a judgment of civil contempt is conditional, and may be lifted if the contemnor purges himself of the contempt, while punishment for criminal contempt is unconditional;
> (3) civil contempt is a facet of the original cause of action, while criminal contempt is a separate cause of action brought in the name of the United States;
> (4) the notice for criminal contempt must indicate the criminal nature of the proceeding.

*Rizzo*, 539 F.2d at 463 (citations omitted).

> **2.   This Court has the authority to affirm that portion of the bankruptcy court's order imposing a civil contempt sanction and to vacate that portion of the bankruptcy court's order imposing a criminal contempt sanction.**

This Court has the authority to affirm that portion of the bankruptcy court's order imposing a civil contempt sanction and to vacate that portion of the bankruptcy court's order imposing a criminal contempt sanction. In *Lamar Financial Corp. v. Adams*, the court found appellant in contempt under Fed. R. Civ. P. 37(b)(2)(D) for failing to comply with an order of the district court directing the production of certain documents requested in the course of pretrial discovery. 918 F.2d at 565. In January 1990, the district court appointed a special master to preside over pretrial discovery. *Id.* at 566. The special master granted the motion to compel the production of documents, and the appellant filed an objection to the order compelling production on February 22, 1990, in which she refused to produce the documents. *Id.* Acting *sua sponte*, the district court on February 28, 1990 ordered the appellant to appear before it on March 6, 1990 and show cause why she should not be held in contempt for her failure to comply with the order compelling production. *Id.* The Court found appellant in contempt, fining her the sum of $500 per day, commencing February 22, 1990 and continuing until she purged herself of contempt by complying with the

production order.  *Id.* On March 14, 1990, appellant finally produced the documents, and the court ordered her to pay the sum of $10,500 into the registry of the Court. *Id.* The total was calculated on the basis of $500 per day from February 22, 1990, the date the appellant formally rejected the order of production, until March 14, 1990, the day the appellant honored the order.  *Id.* Appellant paid that sum into the registry of the Court and appealed.  *Id.*

In characterizing the contempt order as partially civil and partially criminal, the Fifth Circuit held that the contempt order served both a coercive and punitive purpose. *Id.*  at 567.  The daily sanction imposed from February 22 (the date of the order compelling production) to March 6 (the date of the contempt hearing) had a purely punitive purpose because it was not conditioned upon the future conduct of the appellant.  *Id.* Conversely, the portion of the daily sanction from the March 6 (the date of the contempt hearing) until March 14 (the date of production) had a coercive purpose because it was exclusively conditioned on future conduct—the performance of the affirmative act of producing certain documents.  *Id.* The Fifth Circuit vacated the portion of the sanction attributable to the period from February 22 to the March 6 hearing because it constituted a criminal contempt sanction and the appellant was not afforded the procedural safeguards applicable to criminal contempt; however, the Fifth Circuit affirmed the portion of the sanction attributable to the period from March 6 to March 14 because it constituted a civil contempt sanction.  *Id.*  Based on *Adams*, this Court concludes that it has the authority to affirm that portion of the bankruptcy court's order that imposed a civil contempt sanction and vacate that portion of the bankruptcy court's order that imposed a criminal contempt sanction.

**3.      The $6,000 refund payment constituted a civil contempt sanction because it was compensatory and payable to another party.**

A Court's order requiring a contemnor to make a compensatory payment to the other party has consistently been categorized as civil contempt. *See Lamar Financial Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990) ("If the purpose of the sanction is to . . . compensate another party for the contemnor's violation, the order is considered purely civil"). Where a civil contempt fine exceeds the actual loss suffered by the complainant, the fine may become punitive in nature, and therefore more appropriate pursuant to a finding of criminal contempt. *N.L.R.B. v. Laborers' Int'l Union of N. Am.*, 882 F.2d 949, 955 (5th Cir.1989). Fifth Circuit law dictates that civil contempt awards be remedial and compensatory in nature, and not serve as punishment for the contemptuous acts. *Petroleos Mexicanos*, 826 F.2d at 399. However, courts have broad discretion in the assessment of damages to compensate a civil contempt complainant for its losses. *American Airlines*, 228 F.3d at 585; *see, e.g., Sebastian v. Texas Dept. of Corrections*, 558 F. Supp. 507, 510 (S.D. Tex. 1983) (awarding $5,959.00 in civil contempt proceeding for plaintiff's loss of reputation, mental distress and humiliation); *In re Reno*, 299 B.R. 823, 830 (Bankr. N.D. Tex. 2003) (awarding $8,681.00 in civil contempt damages for plaintiff's mental anguish); *In re Musslewhite*, 270 B.R. 72, 78 (S.D. Tex. 2000) (affirming bankruptcy court's civil contempt sanction awarding attorney's fees to a party). Based on this authority, the Court concludes that the $6,000 refund payment from Divins to Debtors constituted a civil contempt sanction.

> ### 4.    The $15,000 fine payment constituted a criminal contempt sanction because it was a punitive fine payable to the Court for a past act of disobedience, and it was not able to be purged through future compliant conduct at the time the fine was assessed.

The Court concludes that the $15,000 fine payment constituted criminal contempt because it was a punitive fine payable to the Court for a past act of disobedience. At the time the fine was imposed, Appellant was not able to purge herself of that contempt through future compliant conduct.

The September 26, 2003 Order stated that future violations of the terms of the Order would result in the imposition of a $5,000 fine each time Appellant engages in a forbidden act. That Order did not compel her to take affirmative action, it prohibited her from taking action. One can argue that the September 26, 2003 Order was coercive in the sense that the bankruptcy judge imposed a prospective fine schedule to coerce Divins *not to do* certain affirmative acts. However, the Court concludes that when a bankruptcy court forbids future conduct, imposes a prospective punitive fine schedule, and then assesses those penalties after the contemnor engages in the forbidden conduct, those contempt sanctions are criminal. Supreme Court and Fifth Circuit case law strongly suggests that when a fine is paid to the Government, that contempt sanction is civil only when it is imposed for the purpose of coercing the contemnor into performance of an affirmative act in the future, such that the contempt may be purged immediately upon the contemnor's compliance. On the other hand, when a fine is paid to the Government, that contempt sanction is criminal when it is imposed for the purpose of punishing the contemnor for engaging in a completed act of disobedience.

The Court concludes that the $15,000 fine payment constituted a criminal contempt sanction based on two Supreme Court cases—*Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911) and *Int'l Union, United Mineworkers of Am. v. Bagwell*, 512 U.S. 821 (1994). Although *Gompers* addressed the issue of when the imprisonment sanction constitutes civil or criminal contempt, the Supreme Court's discussion of the abstract distinction between civil and criminal contempt has been extensively cited in subsequent contempt cases not involving imprisonment. *Gompers* states the following:

> But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what

> he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order.

221 U.S. at 442.

> On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done, nor afford any compensation for the pecuniary injury caused by the disobedience . . . . Such imprisonment operates not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience.

*Id.* at 442-43. *Gompers* concluded with this summary: "The distinction between refusing to do an act commanded (remedied by imprisonment until the party performs the required act), and doing an act forbidden (punished by imprisonment for a definite term), is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment." *Id.* at 443.

In *Int'l Union, United Mineworkers of Am. v. Bagwell*, the Supreme Court addressed a contempt situation that is similar to the one currently before this Court.  The facts of *Bagwell* centered around a protracted labor dispute between the United Mine Workers of America ("union") and Clinchfield Coal Company ("company").  512 U.S. at 823. The state trial court entered an injunction which prohibited the union and its members from obstructing ingress and egress to company facilities, throwing objects at and physically threatening company employees, placing tire-damaging "jackrocks" on roads used by company vehicles, and picketing with more than a specified number of people at designated sites. *Id.* The trial court later held a contempt hearing and found that petitioners had committed 72 violations of the injunction.  *Id.* at 824. After fining the union $642,000 for its disobedience, the court announced that it would fine the union $100,000 for any future violent breach of the injunction and $20,000 for any future nonviolent infraction. *Id.* The court stated that its purpose was to "impos[e] prospective civil fines[,] the payment of which would only be required if it were shown the defendants disobeyed the Court's orders." *Id.*

-20-

In seven subsequent contempt hearings, the trial court found the union in contempt for more than 400 separate violations of the injunction, many of them violent. *Id.* Based on the court's stated "intention that these fines are civil and coercive," each contempt hearing was conducted as a civil proceeding before the trial judge, in which the parties conducted discovery, introduced evidence, and called and cross-examined witnesses. *Id.* As a result of these contempt proceedings, the court levied over $64 million in fines against the union, approximately $12 million of which was ordered payable to the company. *Id.* The remaining $52 million was payable to state and local government. *Id.* While appeals from the contempt orders were pending, the union and the companies settled the underlying labor dispute, agreed to vacate the $12 million in contempt fines payable to the company, and jointly moved to dismiss the case. *Id.* at 825. After reiterating its belief that the remaining $52 million owed to the counties and the Commonwealth were coercive civil fines, the trial court refused to vacate these fines, concluding they were "payable in effect to the public." *Id.*

The Court of Appeals of Virginia reversed and ordered that the $52 million in contempt fines be vacated pursuant to the settlement agreement. *Id.* However, the Supreme Court of Virginia reversed the appellate court and affirmed the trial court's denial of the motion to vacate the $52 million in contempt fines payable to the Government. *Id.* Because the trial court's prospective fine schedule was intended to coerce compliance with the injunction and the union could avoid the fines through obedience, the Supreme Court of Virginia reasoned that the fines were civil and coercive and properly imposed in civil proceedings. *Id.* at 826. The Supreme Court of Virginia stated that "a prospective fine schedule was established solely for the purpose of coercing the Union to refrain from engaging in certain conduct. Consequently, the Union controlled its own fate." *Id.*

The Supreme Court granted certiorari and reversed the judgment of the Supreme Court of Virginia, holding that the $52 million in punitive fines payable to the Government for completed acts

of disobedience constituted a criminal contempt sanction.  The Supreme Court first noted that it had

applied the *Gomper*'s dichotomy between civil and criminal contempt in the fine context.  512 U.S.

at 829.   The Supreme Court stated that where a fine is not compensatory, it is civil only if the

contemnor is afforded an opportunity to purge. *Id.* (citing *Penfield Co. of Cal. v. SEC*, 330 U.S. 585,

590 (1947)). Thus, a "flat, unconditional fine" totaling even as little as $50 announced after a finding

of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine

through compliance. *Id.*  The Supreme Court found a close analogy to coercive imprisonment in a

per diem fine imposed for each day a contemnor fails to comply with an affirmative court order. *Id.*

Like civil imprisonment, such fines exert a constant coercive pressure, and once the jural command

is obeyed, the future, indefinite, daily fines are purged. *Id.*

     The Supreme Court noted that the $52 million in challenged fines were not compensatory

or calibrated  to damages caused by the union's contumacious activities.  *Id.* at 834.  In concluding

that the fines were criminal, the Supreme Court stated the following:

> Despite respondents' urging, we also are not persuaded that dispositive significance
> should be accorded to the fact that the trial court prospectively announced the
> sanctions it would impose. Had the trial court simply levied the fines after finding the
> union guilty of contempt, the resulting "determinate and unconditional" fines would
> be considered "solely and exclusively punitive." Respondents nevertheless contend
> that the trial court's announcement of a prospective fine schedule allowed the union
> to "avoid paying the fine[s] simply by performing the . . . act required by the court's
> order," and thus transformed these fines into coercive, civil ones. Respondents
> maintain here, as the Virginia Supreme Court held below, that the trial court could
> have imposed a daily civil fine to coerce the union into compliance, and that a
> prospective fine schedule is indistinguishable from such a sanction.
>
> Respondents' argument highlights the difficulties encountered in parsing coercive
> civil and criminal contempt fines. The fines imposed here concededly are difficult to
> distinguish either from determinate, punitive fines or from initially suspended, civil
> fines. Ultimately, however, the fact that the trial court announced the fines before the
> contumacy, rather than after the fact, does not in itself justify respondents' conclusion
> that the fines are civil or meaningfully distinguish these penalties from the ordinary
> criminal law. Due process traditionally requires that criminal laws provide prior

notice both of the conduct to be prohibited and of the sanction to be imposed. The trial court here simply announced the penalty determinate fines of $20,000 or $100,000 per violation that would be imposed for future contempts. The union's ability to avoid the contempt fines was indistinguishable from the ability of any ordinary citizen to avoid a criminal sanction by conforming his behavior to the law. The fines are not coercive day fines, or even suspended fines, but are more closely analogous to fixed, determinate, retrospective criminal fines which petitioners had no opportunity to purge once imposed. We therefore decline to conclude that the mere fact that the sanctions were announced in advance rendered them coercive and civil as a matter of constitutional law.

*Id.* at 836-37 (internal citations omitted).  In buttressing its conclusion that the fines were criminal and that heightened procedural safeguards were necessary in this context, the Supreme Court noted that the sanctionable conduct did not occur in the Court's presence, the fines were levied for state-wide violations of a complex injunction, and the fines were substantial. *Id.* at 837.

Applying the principles of *Bagwell* to the current case, the existence of the Bankruptcy Court's prospective fine schedule did not automatically render the $15,000 contempt sanction civil. The $5,000 per violation fine was punishment for a past act of disobedience and was intended to vindicate the authority of the Bankruptcy Court, not to compensate the Debtors for harm resulting from the contumacious activity.  Although a $15,000 fine is certainly not anything close to a $52 million fine, The fine is substantial and cannot be categorized as nominal or trivial.  The Bankruptcy Court's characterization of the entire contempt proceeding as civil is not dispositive of the issue. Additionally, the terms of the Bankruptcy Court's permanent injunction were detailed, such that imposition of the punitive contempt fine required specific evidentiary findings.  Appellant most certainly could not purge herself of this contempt once the sanctions were imposed.

The June 9, 2000 Agreed Order states that it "shall be strictly construed as an Order entered in aid of enforcement of 11 U.S.C. § 110." Although 11 U.S.C. § 110(j)(2)(A) gives the Bankruptcy Court the authority to permanently enjoin Appellant from engaging in "fraudulent, unfair, or

deceptive conduct," the Bankruptcy Court does not have the authority to hold Appellant in criminal

contempt for violation of its section 110(j) permanent injunction.  The Court does not believe that

section 110(j) creates an exception to the Fifth Circuit's rule that bankruptcy courts do not have the

authority to  impose criminal contempt sanctions, and the text of section 110 is silent on the issue.

In the future, the Court suggests that bankruptcy courts use section 110(i) as a vehicle for punishing

contempt of its section 110(j) injunctions.  *See* discussion *infra*.  Section 110(i) monetary sanctions

(including the $2,000 statutory damages) are payable to the debtor, so they would be classified as

civil contempt sanctions.

The Court also finds that the $15,000 fine payment was a criminal contempt sanction based

on Fifth Circuit cases holding that a fine of as little as $500 for failure to appear constitutes criminal

contempt.  *See Williams v. Estelle*, 566 F. Supp. 1376, 1380 (S.D. Tex. 1983) ("The fine of $500

assessed against Evans is not coercive, that is, this 'penalty' will not be automatically lifted on

compliance. Further, that the fine is not remedial is shown by several facts. There has been no claim

by either the plaintiff or the defendants that they have been damaged in the amount of $500. Neither

side seeks to uphold the order. The use of the word 'fine' has a punitive rather than remedial

connotation. And, finally, the purpose appears to be to vindicate the authority of the court"); *In re

Rumaker*, 646 F.2d 870, 871 (5th Cir. 1980) ("Accordingly, we consider the penalty in the present

case to be primarily punitive and, therefore, criminal in nature. The unconditional feature of the $500

fine precluded any mitigation by compliance with a Court order.. Indeed, after the failure of the

examiner to appear there was nothing he could do to purge the contempt . . . . Since, the present

penalty was non-coercive, unconditional and non-compensatory to the real parties of interest, we find

it predominantly criminal. Furthermore, when a contempt proceeding falls short of being wholly

remedial, as in the present case, the criminal feature is dominant and requires this Court to review

-24-

the lower Court's judgment in this light") (internal citations omitted). Based on these cases, the Court concludes that the Fifth Circuit takes a rather expansive view of sanctions classifiable as criminal contempt.  Therefore, the $15,000 fine is VACATED because the Bankruptcy Court does not have jurisdiction to impose a criminal contempt sanction.

**F.    The Court finds that a factual basis existed for the bankruptcy court's imposition of its civil contempt sanction–the $6,000 refund payment.**

Appellant alleges that the bankruptcy court erred in finding sufficient evidence that Appellant violated the June 9, 2000 Agreed Order and the identical restrictions contained in the September 26, 2003 Order.  Appellant bases this contention on the court's finding of facts; therefore, such findings may be overturned only if they are clearly erroneous. *Otto*, 346 F.3d at 533.  Because the court considered documents entered into evidence and testimony given by Appellant, deference must be given to those findings of fact and only be overturned if this Court is left with a "definite and firm conviction that a mistake has been made." *Id*.

To support a finding of civil contempt, the Court must find evidence that (1) a court order was in effect; (2) the order required certain conduct; and (3) the respondent failed to comply with the order. *Piggly Wiggly*, 177 F.3d at 382.  The Court may find an individual in contempt when he violates a definite and specific order of the court requiring him to refrain from performing a particular act with knowledge of the court's order. *Travelhost*, 68 F.3d at 961.  Though knowledge of the court's order is required to find an individual in contempt, intent to violate that order is not necessary to support a finding of civil contempt. *Jim Walter Res.*, 609 F.2d at 168.

It is clear from the Record that Bankruptcy Court Orders were in effect at the time of the Show Cause Hearing.  The June 9, 2000 Agreed Order, which incorporated language from several prior court orders, contained specific provisions that permanently enjoined Appellant from engaging in certain conduct, namely prohibiting Appellant from "making any representation of any kind,

express or implied, to any individual . . . that Rosario Divins or persons associated with her. . . would assist . . . any individuals or persons to 'stop foreclosure.'"  Appellant certainly had knowledge of the order and its provisions because it was an "Agreed Order," to which she signed her name under the heading "AGREED AND APPROVED AS TO FORM AND SUBSTANCE".  The issue on appeal focuses on the third element—whether Appellant failed to comply with the court's order.

Appellant contends that she never made an express representation that she would "stop foreclosure," however the terms incorporated by the June 9, 2000 Agreed Order state that express *and implied* representations suggesting that Appellant can help someone "stop foreclosure" would violate the order.  During the hearing, Juana Anderson testified that "[Divins] told us that she could get our house–guaranteed that she could get our house stopped for foreclosure." Tr. 31:23-25.  Later in the hearing, Appellant testified in response to a question about foreclosure that "I told them that . . . they could waive the foreclosure, and that I had an attorney that . . . I could refer them, and recommend for a temporary restraining order . . . to waive the foreclosure." Tr. 88-89:22-25.

The bankruptcy court concluded that Appellant channeled on "three different occasions to attorneys for the purpose of obtaining foreclosure –temporary restraining orders to stop foreclosure. There's no other reason to get a TRO on the eve of foreclosure other than to stop foreclosure." Tr. 149:17-21. The court interpreted this evidence and testimony to constitute a violation of the terms of both the June 9, 2000 Agreed Order and the September 26, 2003 Order.  This Court does not have a definite and firm conviction that the bankruptcy court made a mistake.  Therefore, deference must be given to the ruling of the bankruptcy court's finding that, as a result of her conduct and dealings, Appellant violated the terms of both the June 9, 2000 Agreed Order and the September 26, 2003 Order.

During the hearing, the amount of compensatory damages was established when Mrs. Anderson testified that she and her common-law husband paid Appellant $5,350 in cash and gave her the title to their 1994 Mazda pick-up truck. Tr. 35:12-15. The court concluded that all the money paid to Appellant by the Debtors was squandered and wasted; therefore, the Court ordered Appellant to make a $6,000 refund payment to compensate the Debtors for the money and Mazda pick-up truck they gave her to stop the foreclosure. Since the bankruptcy court's findings regarding the amount of compensatory damages was supported by testimony, deference must be given to those findings. This Court concludes that the Bankruptcy Court's finding that Appellant violated the terms of the June 9, 2000 Agreed Order and the September 26, 2003 Order and its finding that the amount of compensatory damages totaled $6,000 are both supported by the record and do not constitute an abuse of discretion. The Court AFFIRMS the $6,000 refund payment as a civil contempt sanction.

G.   **The Court will now describe the procedure for bankruptcy courts to follow when certifying criminal contempt matters to the district court.**

Based on the record in this case, the Court strongly disapproves of appellant's continued and persistent violation of prior Bankruptcy Court Orders, and the Court sympathizes with the Bankruptcy Court's desire to vindicate its authority and punish noncompliance with its prior orders prohibiting Divins from engaging in this specified conduct. Thus, the portion of the contempt order requiring the $15,000 fine payment is VACATED AND REMANDED WITH INSTRUCTIONS that the Bankruptcy Court may certify this criminal contempt matter to the District Court for further proceedings.

In *In re Lickman*, 288 B.R. 291 (M.D. Fla. 2003), the bankruptcy court issued an order directing the clerk to transmit a criminal contempt matter to the district court. *Id.* at 292. The *Lickman* Court stated the following:

What this court does not have the power to do, the cases seem to agree, is to use the contempt sanction as punishment for violating the court's orders. *Jove Engineering, Inc. v. Internal Revenue Service,* 92 F.3d 1539, 1558 (11th Cir.1996) (distinguishing punitive aspect of contempt as "punitive and criminal if it is imposed retrospectively for a completed act of disobedience," quoting *International Union v. Bagwell*, 512 U.S. 821, 828, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994)).

In this case, the court has already entered an order sanctioning these defendants. The court's sanctions compensated the plaintiff for the harm caused by the defendants in violating the court's Agreed Preliminary Injunction and coerced compliance with the court's orders. The plaintiff alleges that the defendants have failed to comply with the court's sanction order and continued to violate the Agreed Preliminary Injunction. The plaintiff now seeks to punish these defendants for these actions. Although the defendants admit much of what the plaintiff alleges, the defendants raise defenses that present clear fact issues requiring determination.

As the cited authorities reflect, this court does not have the power to grant the relief requested by the plaintiff. The district court, however, plainly does have that power. Accordingly, the court hereby directs the clerk to transmit promptly this matter to the district court for its consideration of the issues raised in the plaintiff's motion for order of contempt and the defendants' responses.

*Id.* at 293.

The Court believes that *Lickman* describes the appropriate method for a bankruptcy court to follow when certifying a criminal contempt matter to the district court.

**H.    As an alternative to certifying this criminal contempt matter, the Bankruptcy Court may impose monetary sanctions on Appellant pursuant to 11 U.S.C. § 110.**

The Court encourages the Bankruptcy Court to employ the full arsenal of monetary sanctions available under section 110 in order to discourage this type of conduct.  *In re Hennerman*, 351 B.R. 143, 158 (Bankr. D. Colo. 2006) (awarding actual damages and imposing a permanent injunction and a trebled $9,000 fine against a bankruptcy petition preparer who violated section 110); *In re Jarvis*, 351 B.R. 894, 898 (Bankr. E.D. Tenn. 2006) (awarding $2,000 in statutory damages and imposing a trebled $3,000 fine against a bankruptcy petition preparer who violated section 110).

-28-

Section 110(j)(2)(A) authorizes a bankruptcy court to enjoin a bankruptcy petition preparer from engaging in any conduct that violates section 110, including "any other fraudulent, unfair, or deceptive conduct," and section 110(j)(2)(B) authorizes a bankruptcy court to permanently enjoin an individual from acting as a bankruptcy petition preparer. If a bankruptcy petition preparer violates an injunction entered by the Bankruptcy Court pursuant to 11 U.S.C. § 110(j), the Bankruptcy Court may certify this criminal contempt matter to the district court.

As an alternative to certification, the Bankruptcy Court may impose $500 fines on these recidivist contemnors pursuant to section 110(l)(1), which may be trebled pursuant to section 110(l)(2). *See In re Howard,* 351 B.R. 371, 383 (Bankr. W.D. La. 2005); *In re Guttierez*, 248 B.R. 287, 300 (Bankr. W.D. Tex. 2000); *In re McDaniel*, 232 B.R. 674, 679 (Bankr. N.D. Tex. 1999); *In re Williams*, 216 B.R. 600, 602 (Bankr. S.D. Tex. 1997). The Bankruptcy Court may also use section 110(i) as a vehicle for punishing contempt of its section 110(j) injunctions. *See, e.g., In re Jarvis*, 351 B.R. 894, 898 (Bankr. E.D. Tenn. 2006). In this case, the Bankruptcy Court enjoined Appellant from engaging in specified "fraudulent, unfair, or deceptive conduct" pursuant to section 110(j)(2). Section 110(i) states the following:

> (i)(1) If a bankruptcy petition preparer violates this section *or commits any act that the court finds to be fraudulent, unfair, or deceptive*, on the motion of the debtor, trustee, United States trustee (or the bankruptcy administrator, if any), and after notice and a hearing, the court shall order the bankruptcy petition preparer *to pay to the debtor*–
> (A) the debtor's actual damages;
> (B) the greater of--
> (i) $2,000; or
> (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and
> (C) reasonable attorneys' fees and costs in moving for damages under this subsection.
> (2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.

(emphasis added). The Bankruptcy Court's prior section 110(j) injunction enjoined Appellant from engaging in specified "fraudulent, unfair, or deceptive" conduct, and section 110(i) allows the Bankruptcy Court to punish Appellant if she engages in that prohibited "fraudulent, unfair, or deceptive" conduct in the future.  Several bankruptcy courts in the Fifth Circuit have imposed $500 fines pursuant to section 110(l), so the Court sees no reason why they would not be able to impose monetary sanctions pursuant to section 110(i) when a petition preparer engages in fraudulent, unfair, or deceptive conduct that was prohibited by a prior bankruptcy court Order.  This Court was forced to vacate the $15,000 criminal contempt sanction because the $5,000 per violation penalty was in excess of the monetary sanctions allowed by section 110, and it was payable to the Government.  Although section 110(i) sanctions are significant, they are payable to the debtor, so they would be classified as civil contempt sanctions.  The Court is willing to broadly construe the bankruptcy court's sanction power pursuant to section 110; however, the Court must respect the Fifth Circuit's holding that bankruptcy courts may not entertain criminal contempt actions.

### III. Conclusion

The Court AFFIRMS the Bankruptcy Court's order requiring Divins to make a $6,000 refund payment to the Debtors because the refund order was compensatory and constituted a valid exercise of the Bankruptcy Court's civil contempt power.  The Court VACATES the Bankruptcy Court's order requiring Divins to make a $15,000 fine payment to the Clerk of the Bankruptcy Court because the fine was punishment for a past act of disobedience and constituted criminal contempt.  Based on the record in this case, the Court strongly disapproves of appellant's continued and persistent violations of prior Bankruptcy Court Orders, and the Court sympathizes with the Bankruptcy Court's desire to vindicate its authority and punish noncompliance with its prior orders prohibiting Divins from engaging in specified conduct.  However, this Court is constrained by Supreme Court and Fifth

Circuit precedent holding that the imposition of a punitive fine payable to the Court for a past act of disobedience constitutes criminal contempt. Divins is unable to purge herself of this contempt because she has already engaged in the prohibited acts, and the $15,000 fine is not a compensatory payment made to the Debtors. Thus, the portion of the order requiring the $6,000 refund payment is AFFIRMED, and the portion of the order requiring the $15,000 fine payment is VACATED AND REMANDED WITH INSTRUCTIONS that the Bankruptcy Court may certify this criminal contempt matter to the District Court for further proceedings. As an alternative to certifying this criminal contempt matter, the Bankruptcy Court may impose monetary sanctions on Appellant pursuant to 11 U.S.C. § 110. The Clerk is instructed to close this case.

It is so ORDERED.

SIGNED this 20th day of February, 2007.


_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE